# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

PATRICIA CRONAUER, et. al.,    )
    )
       Plaintiffs,    )
    )    Civil Action No.  04-1355 (RBW)
       v.    )
    )
UNITED STATES of America, et al.,    )
    )
       Defendants.    )
_____)

## MEMORANDUM OPINION

The plaintiff brings this personal injury action pursuant to the Federal Torts Claims Act ("FTCA" or the "Act"), 28 U.S.C. §§ 2671, et seq. (2000) for injuries sustained as a result of the alleged negligence of the defendants. Currently before the Court is the United States' Motion to Dismiss ("Def.'s Mot.") [D.E. # 16] pursuant to Federal Rule of Civil Procedure 12(b)(1). For the following reasons, the Court grants the motion to dismiss due to the absence of subject matter jurisdiction.

## I. Background

The adult plaintiffs, Patricia Cronauer and Christian Moreau, bring suit both individually and as parents of their two minor children, Andre and Isabella Moreau. Complaint ("Compl.") ¶ 1. The plaintiffs initially sued several other defendants, however, the only remaining defendants are the United States, the District of Columbia and 555 Pennsylvania Ave. N.W., LLC. Compl. ¶¶ 3-7.[1] The circumstances that resulted in the filing of this lawsuit are the following. On or about August 11, 2001, the children plaintiffs, Andre, who was ten years old at the time, and

_____

[1] The other named defendants that have been voluntarily dismissed from this action by the plaintiffs are: the District of Columbia Water and Sewer Authority, the Washington Area Metropolitan Transit Authority, and the Potomac Electric Power Company. Compl. ¶¶ 4-6.

Isabella, who was twelve years old at the time, were walking with their mother between the 500

and 600 blocks of Pennsylvania Avenue in Northwest Washington, D.C.  Compl. ¶¶ 8-10;

Defendant's Reply in Support of Motion to Dismiss ("Def.'s Reply"), Exhibit ("Ex.") 1 (Letter

from Paul F. Figley, DOJ Acting Director, Torts Branch, Civil Division to George N. Barclay

and Sharon Roach, GSA Acting Attorney General Counsel and Regional Counsel dated August

13, 2003) ("Figley Letter").[2]  The plaintiffs allege that when the children were walking over a

sidewalk manhole, their legs were severely burned by unusually hot steam that was emanating

from the manhole.  Id. ¶¶ 10-13.  The children were taken to Washington Adventist Hospital for

treatment and Andre was referred to the burn unit at Children's Hospital Center where he

underwent surgery for his burns.  Compl. ¶¶ 13-14.  The plaintiffs have brought this action

against the defendants claiming that they negligently owned, operated or maintained the

equipment and apparatus underneath the manhole, and that they were negligent in failing to alert

pedestrians of the danger.  Compl.  ¶ 21.  In addition to seeking damages for the minor plaintiffs'

physical injuries, medical bills and emotional distress, the children's mother is also seeking

damages for negligent infliction of emotional distress.  Compl. ¶¶ 15-19.

Before filing this action, the plaintiffs filed two administrative claims with the Torts

Division of the Department of Justice ("DOJ") on August 11, 2003, exactly two years after the

date of the injuries.[3]  Plaintiffs' Opposition to Defendant United States of America's Motion to

Dismiss ("Pls.' Opp'n") at 1; Def.'s Reply at 1, Ex. A (Letter from Jane Carol Norman to Jeffrey

---

[2]Although the complaint alleges that the incident occurred "on or about August 11, 2001," Compl. ¶ 8, the
incident did in fact occur on August 11, 2001.  See Def.'s Reply, Ex. 1.  Both of the claim forms that were attached
to the letter the plaintiffs sent to the DOJ specifically indicate that the incident occurred on August 11, 2001.

[3]Although the plaintiffs refer to the administrative claim form as "Form 95," the official form is entitled
"Claim for Damage, Injury, or Death."  See Def.'s Reply, Ex. 1.

Bucoltz dated of August 11, 2003).  However, the DOJ was not the proper federal agency to process the plaintiffs' claims, and it therefore forwarded the claims to the proper agency, the General Services Administration ("GSA").  Def.'s Reply, Ex. 1 (Figley Letter).  The claims were received by the GSA on August 14, 2003.  Def.'s Reply, Ex. 2 (Letter from Wanda Alston, GSA Administrative Officer to Jane Carol Norman dated August 27, 2003) ("Alston Letter").  Later, on March 30, 2004, the GSA sent a letter to the plaintiffs denying their claims on the grounds that they had been untimely filed and because of the lack of any evidence of negligence on the part of the GSA.  Def.'s Reply, Ex. 2 (Letter from Sharon A. Roach to Jane Carol Norman of March 30, 2004) ("Roach Letter").  After the denial of their claims by the GSA, the plaintiffs filed this action on August 11, 2004.  Defendant United States has now moved to dismiss the plaintiff's complaint, arguing that this Court lacks subject matter jurisdiction or supplemental jurisdiction pursuant to the FTCA. Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss ("Def.'s Mem.") at 1.  The motion is opposed by the plaintiffs. The issue for the Court is whether the plaintiffs have properly exhausted their administrative remedies as required by the FTCA, which is determinative of whether this Court has subject matter jurisdiction to entertain this case.

## II.  Standard of Review

In considering whether the Court has subject matter jurisdiction, Federal Rule of Civil Procedure (12)(b)(1) "imposes on the [C]ourt an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." Fowler v. District of Columbia, 122 F. Supp. 2d 37, 40 (D.D.C. 2000) (citation omitted).  It is the plaintiff who bears the burden of demonstrating

that the court has jurisdiction.  Id. at 39-40 (citing D.C. Ret. Bd. v. United States, 657 F. Supp.

428, 431 (D.D.C. 1987).  Moreover, the Court can consider matters outside of the allegations in

the pleadings (the complaint)[4] to resolve a motion to dismiss for lack of jurisdiction.  See Fowler,

122 F. Supp. 2d at 40; see also Artis v. Greenspan, 223 F. Supp. 2d 149, 152 (D.D.C. 2002).

"The court must accept as true all of the plaintiff's well-pled factual allegations and draw all

reasonable inferences in favor of the plaintiff; however, the court does not need to accept as true

the plaintiff's legal conclusions."  Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.,

297 F. Supp. 2d 165, 168 (D.D.C. 2003) (citing Alexis v. District of Columbia, 44 F. Supp. 2d

331, 336-37 (D.D.C. 1999)).

## III.  Legal Analysis

One limitation on a court's authority to hear a case is the doctrine of sovereign immunity,

which shields the United States from being sued.  See, e.g., United States v. Mitchell, 445 U.S.

535, 538 (1980).  "It is elementary that '[t]he United States, as sovereign, is immune from suit

save as it consents to be sued . . . and the terms of its consent to be sued in any court define that

court's jurisdiction to entertain the suit.'"  Id. (quoting United States v. Sherwood, 312 U.S. 584,

586 (1941)).  Without a congressional waiver of sovereign immunity, a court will not have

jurisdiction to hear a suit brought against the United States.  Mitchell, 445 U.S. at 538 (citing

Sherwood, 312 U.S. at 587-88).  The FTCA provides such a waiver.  See United States v.

Kubrick, 444 U.S. 111, 117 (1979); Loughlin v. United States, 393 F.3d 155, 155 (D.C. Cir.

---

[4]Although cases use the term "pleadings," it is clear that what is being referenced is the complaint.  Herbert v. Nat'l Acad. of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992) (when considering a Rule 12(b)(1) motion, "where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.") (citations omitted).

2004);  GAF Corp. v. United States, 818 F.2d 901, 903 (D.C. Cir. 1987).  The District of

Columbia Circuit has explained that "[t]he [FTCA] is a limited waiver of the United States'

sovereign immunity and renders the Federal Government liable to the same extent as a private

party for certain torts of its employees . . . ."  GAF Corp., 818 F.2d at 903.  Because the FTCA

waives the government's sovereign immunity, the Act "gives district courts jurisdiction over civil

actions on claims against the United States . . . ."  Loughlin, 393 F.3d at 155 (citing 28 U.S.C. §§

1346(b), 2671-2680 (2000)).

    In its motion to dismiss, the United States argues that the Court should dismiss the

plaintiffs' claims because there has been no waiver of sovereign immunity in situations where the

plaintiffs have "failed to comply exactly with the provisions governing administrative tort claims

. . . ."  Def.'s Mem. at 3.  The United States initially stated in its motion that the "[p]laintiffs have

not alleged that they presented administrative claims to any federal Department or Agency."  Id.

However, in the United States' reply to the plaintiffs' opposition, the government's primary

assertion is that the plaintiffs did not timely file their claims with the appropriate government

agency prior to filing suit in this Court as required by the FTCA.  Def.'s Reply at 1.  Specifically,

the United States declares that the plaintiffs' administrative claims were filed "with the wrong

agency, the Department of Justice, on the last possible day before the two year statute of

limitations expired for the alleged tort."  Id. (citing Ex. 1 (Declaration of Paula J. DeMuth dated

January 4, 2004 ("DeMuth Decl."))) ¶ 2.[5]  The United States relies on 28 U.S.C. § 2401(b) (2005),

---

[5]Ms. DeMuth is the Assistant Regional Counsel, National Capital Region, of the United States General
Services Administration.  DeMuth Decl. ¶ 1.  She is responsible for processing all tort claims filed under the FTCA.
Id.

which states that a "tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues . . . ." See Def.'s Reply at 3.  The United States posits that the GSA is the appropriate federal agency, and that the GSA did not receive the plaintiffs' claims until August 14, 2003, which was more than two years after the plaintiffs' claims accrued.[6]  Def.'s Reply at 4.  The United States emphasizes that although the plaintiffs timely filed their claims with the DOJ, this was not in compliance with the FTCA because the DOJ was not the appropriate agency, and that sections 2401(b) and 2675(a) of the Act require that the claims be presented to the "appropriate Federal agency."  Id. at 3-4.  The United States also asserts that filing of the plaintiffs' administrative claims with the DOJ should not be regarded as constructive filing with the GSA.  Id. at 4.  Hence, the United States concludes that the plaintiffs' tort claims should be dismissed because the plaintiffs' "failure to properly adhere to the FTCA's administrative claim presentment requirement is fatal" to their ability to pursue their claims.  Def.'s Mem. at 3.

In their opposition to the United States' motion to dismiss, the plaintiffs claim that "[t]o the extent that the United States is alleging that [the p]laintiffs did not file an administrative claim and exhaust their administrative remedies, this is simply incorrect."  Pls.' Opp'n at 5.  The plaintiffs further contend that their "[f]ederal [a]dministrative remedies were fully exhausted . . . ."  Id.  The plaintiffs acknowledge that the FTCA requires a party to file an administrative claim

---

[6]The date of the alleged injury was August 11, 2001.  See Def.'s Reply, Ex. 1.  Generally, when an injury is of the type that can reasonably be discovered at the time of the injury, a claim accrues on the date of the injury, Connors v. Hallmark & Son Coal Co., 935 F.2d 336, 342 (D.C. Cir. 1991) (citing Cada v. Baxter Healthcare Corp., 920 F.2d 446, 450 (7th Cir. 1991), and therefore argues the United States, August 11, 2003, was the day when the statute of limitations expired.  However, the plaintiffs argue that the claims did not accrue until a later date, Pls.' Opp'n to Reply at 6, and the Court will address this position below.

form and then, after the agency's final denial of the administrative complaint, to timely file a

judicial complaint.  Id. at 4-5 (citing 28 U.S.C. §§ 2675(a), 2401(b)).  And, the plaintiffs contend

that their complaint clearly alleges that they "made an administrative Form 95 claim with the

United States and that the claim was rejected."  Id. at 5.  Additionally, the plaintiffs request leave

to amend their complaint if the Court concludes that they should have provided greater

specificity as to when they filed their administrative claims and the agency's rejection of the

claims.  Id. at 6.

    In further response to the United States' allegation that the administrative claims were not

timely filed, the plaintiffs contend that the "government should be estopped from taking this

position . . . ."  Pls.' Opp'n to Reply at 13.  The plaintiffs opine that their claims should be

considered timely filed with the appropriate agency because they allege that when their counsel

called the Torts Division of the DOJ on August 11, 2004 to identify the appropriate federal

agency, no one at the DOJ could provide plaintiffs' counsel with that information.  Id. at 14.

They contend that if the DOJ could not identify the agency responsible for their claims, then the

plaintiffs should not be expected to have had this knowledge either.  Id.  Moreover, the plaintiffs

assert that the "Justice Department could have faxed or otherwise forwarded the Form 95[] to

[the] GSA on [August 11, 2004,]" and that "[t]hey [could] not sit on them and then claim they

are two days late[.]"  Id.

    Contrary to the United States' initial argument, it is clear that the plaintiffs did allege in

their complaint that they filed administrative claims with the government prior to filing their

complaint in this Court, Compl. ¶ 2, and that they filed their claims with the DOJ.  Def.'s Reply,

Ex. 1 (Figley Letter).  Thus, the only issue remaining is whether these claims were filed timely

with the appropriate agency, which as already noted is determinative of whether this Court has

jurisdiction over the plaintiffs' claims.  According to the United States, based on the documents

presented to the Court, it is evident that the plaintiffs' administrative claims were not timely filed

with the appropriate federal agency.  Def.'s Reply, Ex. 2 (Roach Letter); Def.'s Reply, Ex. 1

(DeMuth Decl).  In determining the appropriate federal agency for filing an FTCA claim, the

Code of Federal Regulations provides that it is the agency "whose activities [give] rise to the

claim."  Def.'s Reply at 4 (quoting 28 C.F.R. § 14.2(b)(1) (2004)).  The Assistant Regional

Counsel of the National Capital Region of the GSA stated in her declaration that the GSA is

responsible for maintaining a tunnel through which steam pipes provide heat to buildings in the

District of Columbia and that the manholes in question belong to the GSA.  Def.'s Reply, Ex. 1

(DeMuth Decl.).  She further declares that the GSA was the appropriate federal agency for the

filing of the plaintiffs' administrative claims.  Id.

　　　With respect to the timeliness of the filing of their administrative claims, the plaintiffs

allege that the children were injured on August 11, 2001.  See Def.'s Reply, Ex. 1.  Section

2401(b) of the FTCA provides that an administrative claim must be presented within two years

from the time the claim accrues.  28 U.S.C. § 2401(b).  And, as the defendant accurately points

out, the Code of Federal Regulations specifies that the administrative claim shall be deemed

presented as of the date the appropriate agency receives it.  Def.'s Reply at 4 (citing 28 C.F.R. §

14.2(b)(1)) (emphasis added).  Here, the GSA did not receive the plaintiffs' administrative claims

until August 14, 2003, three days after the two year statute of limitations period expired.  Def.'s

Reply, Ex. 2 (Roach Letter).  The GSA also indicated in its letter to the plaintiffs that one of the

reasons their administrative claims were denied was "because [they were] not timely filed."  Id.

Thus, because the GSA, which was the appropriate federal agency to address the plaintiffs'

claims, did not receive the claims until more than two years after the date of the alleged injuries,

the plaintiffs' claims were not timely filed as required by the FTCA.  28 U.S.C. § 2401(b).

However, some courts have allowed for the possibility that a party can pursue a court

action under the FTCA even when the administrative claims were not in the first instance filed

timely with the appropriate federal agency.  See Bukala v. United States, 854 F.2d 201, 204 (7th

Cir. 1988); United States v. Greene, 872 F.2d 236, 237 (8th Cir. 1989).  In these cases, the courts

considered the administrative claims to have been constructively filed with the appropriate

agency although they were originally filed with the incorrect agency.  Bukala, 854 F.2d at 204;

Greene, 872 F.2d at 237.  In Greene, the plaintiff filed her claim with the GSA after being injured

by a fall in a building owned by the United States.  872 F.2d at 236.  The GSA acknowledged

receiving the plaintiff's claim and then denied the claim three months later.  Id.  When the

plaintiff brought an action pursuant to the FTCA in district court, the government alleged in its

answer that the plaintiff's claim was filed with the wrong federal agency, and that the building

where the plaintiff was injured was actually under the jurisdiction of the Department of Labor,

not the GSA.  Id.

Like the government asserts in this case, the government in Greene argued that the district

court should dismiss the plaintiff's complaint for lack of jurisdiction because of the plaintiff's

failure to timely file an administrative claim with the appropriate federal agency.  Id.  In

response, the plaintiff argued that her administrative claim was constructively filed with the correct agency because the government had not complied with the transfer requirements set forth in 28 C.F.R. § 14.2(b)(1), which requires the agency to whom the claim was presented to "transfer it forthwith to the appropriate agency, if the proper agency can be identified from the claim, and advise the claimant of the transfer." In reversing the district court, the Eighth Circuit agreed with the plaintiff and held that "[w]hen a federal agency fails to comply with section 14.2(b)(1), a claim that is timely filed with an incorrect agency shall be deemed timely presented to the appropriate agency." Greene, 872 F.2d at 237.

The Greene Court relied on the Seventh Circuit's reasoning in Bukala. Greene, 872 F.2d at 237. In Bukala, the plaintiff's administrative claim, filed pursuant to the FTCA, was addressed to the Veterans Administration ("VA"), but was accidently delivered by the plaintiff's counsel to the Equal Employment Opportunity Commission ("EEOC"). 854 F.2d at 202. The EEOC did not forward the plaintiff's claim to the VA, the appropriate agency, until over one year after the plaintiff had wrongly filed it with the EEOC, at which time, the two year statute of limitations had expired. Id. The VA subsequently rejected the plaintiff's claim. Id. The government moved to dismiss the plaintiff's court action for lack of jurisdiction, and the district court granted the motion, finding that the FTCA "must be narrowly construed and strictly limited to the conditions set by Congress." Id. at 203 (citing Kubrick, 444 U.S. at 117-18). However, after examination of the history of the FTCA, the Seventh Circuit reversed, holding that "[i]nterpreting the transfer regulation to allow for constructive filing (i.e., a relation back) of claims presented within the limitations period of § 2401(b) but delivered to the wrong agency

-10-

and neither transferred to the proper agency nor returned to the claimant, is both logical as well as fair and equitable." Id.

While both Greene and Bukala found that there had been constructive filing in those circumstances, 872 F.2d at 236; 854 F.2d at 201, there have also been numerous cases in which courts have ruled to the contrary. See Hart v. Dep't of Labor, 116 F.3d 1338, 1341 (10th Cir. 1997); Johnson v. United States, 906 F. Supp. 1100, 1104 (S.D. W. Va. 1995); Lotrionte v. United States, 560 F. Supp. 41 (S.D.N.Y. 1983), aff'd, 742 F.2d 1436 (2d Cir. 1983). In Lotrionte, the plaintiff, who was suing for the wrongful death of her husband, alleged that she had sent two letters to two different offices of the Public Health Service. 560 F. Supp. at 42. These letters, which allegedly were accompanied by a claim for damage form, were determined by the court not to have been received by the Public Health Service prior to the expiration of the two year statute of limitations period. Id. at 42-43. Furthermore, the Public Health Service was not the appropriate agency to which the plaintiff was required to present her claim; rather, the VA was the appropriate agency, and the VA did not receive the claim until seven days after the statute of limitations had expired. Id. at 43. Notably, the Lotrionte Court found that "[e]ven had the . . . Public Health Service received plaintiff's Claim for Damage on [the final day before the statute of limitations expired], plaintiff's claim would still be time barred." Id. The Court reasoned that "it would be error to deem a claim presented, for the purposes of 28 U.S.C. § 2401(b), on the day it is received by the improper agency. Such a reading makes the use of the term 'appropriate' in the statute, superfluous." Id. Accordingly, the Lotrionte Court dismissed the case for lack of subject matter jurisdiction because the plaintiff failed to satisfy the

jurisdictional requirements of the FTCA, id., and this ruling was affirmed by the Second Circuit. 742 F.2d 1436.

Similarly, the Court in Johnson dismissed an action brought pursuant to the FTCA based on the plaintiffs' untimely presentment of their administrative claim to the appropriate agency. 906 F. Supp at 1104. The plaintiffs in Johnson presented their claim to the wrong agency, the DOJ, on the final day before the statute of limitations expired. Id. The DOJ mailed the claim to the appropriate agency the very next day, so the appropriate agency did not receive the claim within the two year limitation period. Id. Reaching the same conclusion as the Court in Lotrionte, the Johnson Court found that "[u]nfortunately for [the p]laintiffs, their error in presenting their claim to the wrong federal agency on the last possible day before the two year statute of limitations expired ha[d] the drastic consequence [of leaving the] Court . . . without subject matter jurisdiction to hear their claim." 906 F. Supp. at 1104.

Although the Greene and Bukala Courts concluded that there had been constructive filing where the plaintiffs filed tort claims with the wrong agency, it is apparent that the facts of those cases are distinct from those of Lotrionte and Johnson, where the courts dismissed the claims for lack of subject matter jurisdiction. This case is clearly more analogous to the latter cases. In both Lotrionte and Johnson, the plaintiffs did not file their administrative claims with the appropriate agency until near the very end of the statute of limitations period. Lotrionte, 560 F. Supp. at 42-43 (three days before the expiration date); Johnson, 906 F. Supp. at 1100 (one day before the expiration date). In fact, the Bukala Court recognized the distinction between the facts there and those in Lotrionte, noting in Lotrionte that "[a]bsent governmental misconduct . . . last-

-12-

minute filings are surely the least compelling cases for allowing constructive filing." <u>Bukala</u>,

854 F.2d at 204 n.4.

Similar to the plaintiffs in <u>Lotrionte</u> and <u>Johnson</u>, the plaintiffs here filed their claims

with the wrong agency on the final day before the two year statute of limitations period expired.

Def.'s Reply, Ex. A (Figley Letter).  As the cases reveal, courts do not consider claims filed with

the wrong agency at the <u>last minute</u> to be timely filed pursuant to § 2401(b).  <u>Cf.</u> <u>Hart</u>, 116 F.3d

at 1341 (when a "claimant waits until the eleventh hour to file and, despite notification of the

appropriate agency, the filing is misdirected, there is no compelling reason for allowing

constructive filing.")  Permitting constructive filing here, where the plaintiffs waited until the day

before the filing deadline expired and filed with the wrong agency, would undermine the

legislative decision that requires "prompt presentation of claims against the federal government."

<u>Hart</u>, 116 F.3d at 1341 (quoting <u>Pipkin v. United States Postal Serv.</u>, 951 F.2d 272, 275 (10th

Cir. 1991)).

Moreover, in the cases that permitted constructive filing, the government agency that

initially received the claims were negligent in transferring the claims to the appropriate agencies.

<u>See</u> <u>Greene</u>, 872 F.2d at 237 (noting that the wrong agency never transferred the claim to the

appropriate agency or returned the claim to the plaintiff); <u>Bukala</u>, 854 F.2d at 202, 203

(explaining that the appropriate agency did not receive the claim until over one year after the

claim was filed with the wrong agency because the incorrect agency failed to promptly transfer

the claim).  Unlike the cases involving government negligence or dilatoriness, here, the DOJ

received the plaintiffs' administrative claim on August 11, 2003, Def.'s Reply, Ex. 1 (Figley

Letter), and it was promptly transferred to the GSA, which received the claims on August 14,

2003, only three days after the plaintiffs filed their claim with the DOJ.  Def.'s Reply, Ex. 2

(Alston Letter).  28 C.F.R. § 14.2(b)(1) specifies that "[w]hen a claim is presented to any other

Federal agency, that agency shall transfer it <u>forthwith</u> to the appropriate federal agency . . . ."

(emphasis added).  It is evident that the DOJ complied with this requirement.  Although the

plaintiffs argue that the DOJ should have faxed the claims to the GSA on the day it received

them, Pl.'s Opp'n to Reply at 14, the Court cannot accept this position.  Not only is the position

inconsistent with existing precedent, but it is unrealistic to demand such a rapid turnaround by a

massive agency like the DOJ.

Particularly instructive is the <u>Johnson</u> case where the plaintiff argued that the wrong agency

had a duty to electronically mail the claim to the appropriate agency.  906 F. Supp. at 1103.  The

<u>Johnson</u> Court rejected this contention, and found that "sending the claim by mail to the [appropriate

agency] the very next day after it was received was a prompt response, complying with the [forthwith

requirement of the C.F.R]."  <u>Id.</u> at 1104  This Court agrees, and finds that the DOJ did in fact

"transfer the claim[s] forthwith."  <u>Id.</u> at 1104 (citing 28 C.F.R. § 14.2).  In this case, the DOJ sent

the claims to the GSA only two days after having received them, and "[t]he Court must imply at least

a minimal period for transfer of the claim to the appropriate agency," <u>Lotrionte</u>, 560 F. Supp. at 43,

and two days certainly fall within this minimal transfer period.  The Court recognizes that the

plaintiffs assert that they had difficulties ascertaining the identity of the responsible agency, but it

cannot be overlooked that they had two years to make that determination.  In any event, this Court

is not at liberty to deviate from the clear statute of limitations period mandated by the FTCA.  <u>See</u>

Kubrick, 444 U.S. at 117-18.  ("We should also have in mind that the Act waives the immunity of the United States and that in construing the statute of limitations, which is a condition of that waiver, we should not take it upon ourselves to extend the waiver beyond that which Congress intended.") (citations omitted).  Here, had the plaintiffs not waited until the very last day of the limitation period to file their administrative claims, the DOJ would have undoubtedly identified the appropriate agency, as it did, and transferred the claims before the expiration of the two year period.  However, where a claimant waits until the eleventh hour to file a claim and "one agency of the government attempts in a dutiful and timely fashion to transfer a misdelivered claim to the appropriate federal agency and despite due diligence the claim arrives at the proper agency after the two-year limitations period has run, the claim will be time-barred."  Bukala, 854 F.2d at 204 (citing 28 C.F.R. § 14.2(b)(1)).

In their opposition to the United States' reply in support of its motion for dismissal, the plaintiffs maintain that "[t]he two year statute of limitations did not start running until the plaintiffs had reason to believe that the federal government might be responsible."  Plaintiffs' Memorandum in Opposition to the Defendant United States' Reply to Plaintiffs' Opposition ("Pls.' Opp'n to Reply") at 6.  The plaintiffs contend that they did not have reason to believe the government was responsible until July 12, 2002, when they received a letter from another named defendant, Potomac Electric Power Company ("PEPCO").  Id. at 11.  Allegedly, the PEPCO letter "blaming some government entity and denying responsibility . . . put plaintiffs on some notice that the federal government could be involved."  Id. at 12.  While the plaintiffs acknowledge that a tort claim usually accrues at the time of injury, they urge the Court to apply the  "discovery rule," which, as an

exception to the general rule, provides that claims accrue when a plaintiff is aware of his injury and its cause.  Id. at 6, 7 (citing Kubrick, 444 U.S. at 111).  The plaintiffs further state that although this exception was initially created for medical malpractice cases, it has been extended to other types of cases as well, id. at 7, and purport that "[m]ore importantly, the discovery rule has also been applied in non-medical malpractice cases where it cannot be readily known that the federal government was involved in the tort."  Id. (citing Attalah v United States, 955 F.2d 776, 780 (1st Cir. 1992).  The plaintiffs explain that there was no identifying information on the manhole cover, and "no insignia or other markings to associate the manhole with the United States."  Id. at 10.  They further contend that until receiving the denial letters from the more obvious parties (PEPCO), there was no way they could have known that the United States was potentially responsible.  Id. at 12-13.

It is well established that for purposes of the FTCA, a claim usually accrues at the time of the plaintiff's injury.  See, e.g., Kubrick, 444 U.S. at 120;  Garza v. U.S. Bureau of Prisons, 284 F.3d 930, 934 (8th Cir. 2002); Stoleson v. United States, 629 F.2d 1265, 1268 (7th Cir. 1980).  In Kubrick, the Supreme Court specifically addressed the issue of when a claim accrues under the FTCA, and held that the claim accrues "when the plaintiff knows both the existence and the cause of his injury . . . ," and not at a later time . . ." when he knows that his injury was caused by the government's negligence.  444 U.S. at 113.  The Kubrick case was a medical malpractice case, but as the plaintiffs note, the rule set forth in the decision has been applied to other types of cases, such as trespass, nuisance and occupational safety.  Pls.' Opp'n to Reply at 7; see Lhotka v. United States, 114 F.3d 751, 753 (8th Cir. 1997); Stoleson 629 F.2d at 1268.  However, this rule is generally applied to cases where the injury or the cause of the injury is not obvious.  In Lhotka, a

case involving nuisance and trespass, the plaintiffs alleged that the Fish and Wildlife Service constructed dikes that exceeded the scope of an existing easement and caused flooding on their property.  114 F.3d at 752.  The Eighth Circuit applied the "discovery rule" and held that the plaintiffs' claims did not accrue until they were aware that there was abnormal flooding on their property.  Id. at 753.  The Court reasoned that the claim did not accrue when the dikes were constructed by the United States or when the injury was actually inflicted because the "outward signs of any tort remained hidden . . ." and the plaintiffs "could not have assessed the latent water damage . . . ."  Id.

Similarly, the Court in Stoleson applied the discovery rule in a case involving occupational safety, where the plaintiff was diagnosed with cardiovascular problems that were later determined to be caused by nitroglycerin exposure that occurred at the place of her employment.  629 F.3d at 1267-68.  Rather than finding that the plaintiff's FTCA claim accrued on the date when the plaintiff was first hospitalized for heart problems, the Court found that the claim accrued when a doctor later informed the plaintiff of the connection between her exposure to nitroglycerin and her cardiovascular problems.  Id. at 1270-71.  The Court reasoned that "any plaintiff who is blamelessly ignorant of the existence or cause of his injury shall be accorded the benefits of the discovery rule."  Id. at 1269.  The Stoleson Court reasoned that "if medical science had not recognized the causal relation between chronic nitroglycerin exposure and cardiovascular problems until the year 2000, the statute of limitations would not commence to run until that late date."  629 F.2d at 1271.

This case is clearly distinguishable from these non-medical malpractice cases that have deviated from the general rule that a claim accrues on the date of injury.  Here, the plaintiffs' injuries

were apparent immediately.  Compl. ¶¶ 10-13.  As soon as the children walked over the manhole

they allegedly began screaming in pain, and were promptly taken to hospitals for treatment.  Id. ¶¶

11-13.  Furthermore, the plaintiffs were aware of the direct cause of the injury at the time of the

injury – that the steam emanating from the manhole had burned the children.  Id. ¶ 10.  Unlike cases

where the injury surfaced months after the damage had been inflicted, see, e.g., Lhotka, 114 F.3d at

753, or where the cause of the injury was not clear at the time the injury became apparent, see, e.g.,

Stoleson 629 F.2d at 1270, the plaintiffs in this case were aware of both their injuries and the direct

cause of their injuries as soon as the injuries occurred.

     In further support of their position that the statute of limitations did not begin to run until they

had reason to believe that the federal government might be responsible, the plaintiffs cite Drazan v.

United States, 762 F.2d 56 (7th Cir. 1985).  There, the Seventh Circuit determined that the plaintiff's

cause of action accrued in a wrongful death case only when the plaintiff "should have suspected

government causality in the death of her husband . . . ."  Id. at 60 (emphasis added).  However, as

the District of Columbia Circuit observed, the plaintiff in Drazan had no reason to know that there

may have been negligence involved in the decedent's medical treatment.  See Sexton v. United

States, 832 F.2d 629, 635-36 (D.C. Cir. 1987).  Unlike the plaintiff in Drazan, the plaintiffs here

suspected negligence immediately after the burn  injuries occurred, and sought legal advice six days

after the children were injured.  Pls.' Opp'n to Reply at 2.  Moreover, application of Drazan to this

case would also be misplaced because although the plaintiff in Drazan knew of the government's

involvement in her husband's medical treatment, she had no knowledge of the government's

negligence, particularly the omission of follow-up treatment.  Drazan, 762 F.2d at 57.  In this case,

the plaintiffs were obviously aware that someone may have been negligent, but they did not realize

that the negligent party may have been the federal government.   Pls.' Opp'n to Reply at 2-5.

However, considering the distinctive governmental structure of the District of Columbia, its unique

relationship with the United States, and the prevalence of the United Sates in the city as a land

owner, especially in the area where the injuries occurred, should have given the plaintiffs reason to

believe that the United States might be a culpable party.   The medical malpractice nature of the

situation in Drazan, coupled with the other factors noted above, clearly distinguish the present case

from Drazan.   Id.

The District of Columbia Circuit emphasized in Sexton that the FTCA's statute of

limitations, like any such statute, "puts inquiry burdens on a plaintiff . . . ."   Sexton, 832 F.2d at 636

(citing Kubrick, 444 U.S. at 123 n.10).   While it may be true that the plaintiffs' attorney went to the

District of Columbia land records office, obtained a map of the underground area beneath the

manhole and hired an investigator to research the manhole site, Pls.' Opp'n to Reply at 2-3, the Court

does not accept the plaintiff's representation that "[t]here was no way that [the] plaintiffs could have

known earlier that the United States might be responsible."   Id. at 13.   According to the plaintiffs,

it was PEPCO's letter denying responsibility and "suggesting another utility, or government entity

or private entity" was the responsible party, that first put the plaintiffs on notice that the federal

government may have been responsible for the hot steam coming from the manhole.   Id. at 12, Ex.

1 (Declaration of Jane Carol Norman, Esquire (undated) at 2.   The Court finds this argument simply

unconvincing.   In addition to what the Court indicated above regarding why the plaintiffs should

have suspected that the United States might be a culpable party, prior to receiving the PEPCO letter,

the plaintiffs received a denial letter from the District of Columbia, which stated "that the responsibility lay with a utilities company[7] or other entity."[8]  Pl.'s Opp'n to Reply at 3.  If it was not the District of Columbia government that was responsible for the system or systems that caused the injury, it is unfathomable that the plaintiffs' suspicion would not be directed to the United States, as it is common knowledge that underground systems beneath public streets and sidewalks are sometimes maintained by government entities.  And if not the District of Columbia, the only other government entity would have to be the United States.   The plaintiffs in Zeleznik v. United States, 770 F.2d 20 (3d Cir. 1985), argued that the statute of limitations should not begin to run until "a reasonably diligent investigation would . . . have discovered the government's actions."  Id. at 24.  In rejecting this argument, the Third Circuit found that "[t]he difficulty with such a reasonableness standard is that it would make every accrual date indefinite as to unknown possible parties [, and t]he statute of limitations is meant to be applied in a uniform manner."  Id. (citing Steele v. United States, 599 F.2d 823, 826 (7th Cir. 1979).  If this Court accepted the plaintiffs' position that the statute of limitations only began to run when they received the denial letter from PEPCO since after receiving the letter "[plaintiffs' counsel] wondered for the first time if the United States could be involved," the Court surely would not be applying the statute of limitations in a uniform manner.  Pls.' Opp'n to Reply, Ex. 1 (Norman Decl.) at 3.  In essence, the plaintiffs are asserting that the commencement of the statute of limitations period should be based on their attorney's mental processes; this is

---

[7] In addition, former defendant the District of Columbia Water and Sewer Authority denied liability in a letter dated April 2, 2002, which suggested another utility may be responsible for the manhole. Pls.' Opp'n to Reply at 4.

[8]The plaintiff's counsel was unable to locate the letter received from the District of Columbia, thus the precise language of the letter is not known. Pls.' Opp'n to Reply; Ex. 1 (Norman Decl. n.1).

clearly not something the Court can consider in its determination of when the plaintiffs' claims accrued.

Finally, there was ample time for the plaintiffs to discover that the United States was possibly responsible for operating the steam tunnel below the manholes within the two year statute of limitations period. Even if, as the plaintiffs allege, they could not have realized that the federal government was the responsible party until receiving the PEPCO denial letter, the plaintiffs could have taken active measures to discover the responsible government agency much sooner than they did. But after receiving the letter from PEPCO on July 12, 2002, the plaintiffs did not even take the step of contacting the United States until calling the DOJ on August 11, 2003. Pls.' Opp'n to Reply at 5. As a result of the plaintiffs' inaction for over one year after they claim for the first time they "suspected that the government was involved," Pls.' Opp'n to Reply at 13, their claims were not received by the GSA, the appropriate federal agency, until yet another year later on August 14, 2003. Because this Court has decided that the plaintiffs' claims accrued on the date of the injuries – August 11, 2001 – their administrative claim forms were not presented to the GSA within the two year statute of limitation period as required by 28 U.S.C. § 2401(b). "It goes without saying that statutes of limitations often make it impossible to enforce what were otherwise perfectly valid claims. But that is their very purpose, and they remain as ubiquitous as the statutory rights or other rights to which they are attached or are applicable." Kubrick, 444 U.S. at 125. Without having properly exhausted their administrative remedies in the manner mandated by the FTCA, there has been no waiver the United States' sovereign immunity, "[a]nd waivers of sovereign immunity, the Supreme Court has repeatedly reminded us, must be narrowly construed." Haase v. Sessions, 893 F.2d 370,

373 (D.C. Cir. 1990) (citations omitted).  Thus, as unfortunate as the consequences are, the Court

must dismiss the plaintiffs' claims filed against the United States because it is without subject matter

jurisdiction to entertain these claims.

## IV.  Conclusion

Based on the foregoing analysis, the Court holds that the plaintiffs did not timely file their

administrative claims with the appropriate federal agency, and hence did not properly exhaust

their administrative remedies as required by the FTCA.  Accordingly, the defendant's motion to

dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure is granted.

**SO ORDERED** this 30th day of September, 2005.[9]

REGGIE B. WALTON
United States District Judge

---

[9]An Order consistent with this Memorandum Opinion is being issued contemporaneously herewith.